**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| | x | |
| | : | |
| BUILDING TRADES PENSION FUND OF WESTERN PENNSYLVANIA, Individually and on Behalf of All Others Similarly Situated, | : : : | No. 1:20-cv-05635-NRB |
| | : | Judge Naomi Reice Buchwald |
| Plaintiff, | : : | CLASS ACTION |
| v. | : : | ORAL ARGUMENT REQUESTED |
| INSPERITY, INC., PAUL J. SARVADI, and DOUGLAS S. SHARP, | : : : : | |
| Defendants. | : : : | |
| | x | |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF WAYNE COUNTY EMPLOYEES' RETIREMENT SYSTEM AND OKLAHOMA LAW ENFORCEMENT RETIREMENT SYSTEM FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL**

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ............................................................................................................. ii

PRELIMINARY STATEMENT ...................................................................................................... 1

FACTUAL BACKGROUND ........................................................................................................... 3

ARGUMENT ................................................................................................................................... 5

I.    WAYNE COUNTY AND OLERS SHOULD BE APPOINTED LEAD
      PLAINTIFF .......................................................................................................................... 5

      A.    The PSLRA Standard For Appointing Lead Plaintiff ............................................... 5

      B.    Wayne County and OLERS Are The "Most Adequate Plaintiff" ............................. 6

            1.    Wayne County and OLERS' Motion Is Timely ........................................... 6

            2.    Wayne County and OLERS Have the Largest Financial Interest ............... 7

            3.    Wayne County and OLERS Satisfy Rule 23's Typicality and
                  Adequacy Requirements .............................................................................. 7

                  (i)    Wayne County and OLERS' Claims Are Typical ........................... 8

                  (ii)   Wayne County and OLERS Will Fairly and Adequately
                         Protect the Interests of the Class .................................................... 8

            4.    Wayne County and OLERS Are Precisely the Type of Lead
                  Plaintiff Envisioned by the PSLRA ........................................................... 10

II.   WAYNE COUNTY AND OLERS' SELECTION OF COUNSEL MERITS
      APPROVAL ........................................................................................................................ 13

CONCLUSION .............................................................................................................................. 14

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*,
258 F.R.D. 260 (S.D.N.Y. 2009) ................................................................10, 12

*Bevinal v. Avon Prods., Inc.*,
No. 19 Civ. 1420 (CM), 2019 WL 2497739 (S.D.N.Y. June 3, 2019)....................................7

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001)..................................................................................13

*Faig v. BioScrip, Inc.*,
No. 13 Civ. 06922(AJN), 2013 WL 6705045 (S.D.N.Y. Dec. 19, 2013)..........................6, 9

*Glauser v. EVCI Career Colls. Holding Corp.*,
236 F.R.D. 184 (S.D.N.Y. 2006) .........................................................................10

*Hom v. Vale, S.A.*,
No. 1:15-cv-9539-GHW, 2016 WL 880201 (S.D.N.Y. Mar. 7, 2016)................................8, 9

*Lipetz v. Wachovia Corp.*,
No. 08 Civ. 6171 (RJS), 2008 WL 4615895 (S.D.N.Y. Oct. 10, 2008) ...................................9

*Mustafin v. GreenSky, Inc.*,
No. 18 Civ. 11071(PAE), 2019 WL 1428594 (S.D.N.Y. Mar. 29, 2019) .............................12

*Peifa Xu v. Gridsum Holding Inc.*,
No. 18 Civ. 3655 (ER), 2018 WL 4462363 (S.D.N.Y. Sept. 17, 2018) .................................8

*Reimer v. Ambac Fin. Grp., Inc.*,
No. 08 Civ. 411(NRB), 2008 WL 2073931 (S.D.N.Y. May 9, 2008)...................................12

*Rhode Island Laborers' Pension Fund v. FedEx Corp.*,
No. 19-CV-5990 (RA), 2019 WL 5287997 (S.D.N.Y. Oct. 18, 2019)...................................6

**Rules & Statutes**

Fed. R. Civ. P. 23 ................................................................................. *passim*

15 U.S.C. § 78u-4, *et seq.* .................................................................... *passim*

**Docketed Cases**

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
No. 04-cv-8141 (S.D.N.Y.)..................................................................................13

*In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*,
No. 08-md-1963 (S.D.N.Y.) ...................................................................................13

*New Jersey Carpenters Health Fund v. Residential Capital, LLC*,
No. 08-cv-8781 (HB) (S.D.N.Y.) ............................................................................14

*New Jersey Carpenters Health Fund v. The Royal Bank of Scotland Grp., plc*,
No. 08-cv-05310-DAB-HBP (S.D.N.Y.)..................................................................14

*Rubin v. MF Global, Ltd.*,
No. 08-cv-2233 (VM) (S.D.N.Y.)............................................................................14

*In re Satyam Comput. Servs. Ltd. Sec. Litig.*,
No. 09-md-2027 (S.D.N.Y.) ...................................................................................13

**Other Authorities**

H.R. Conf. Rep. No. 104-369 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730 ..........................10, 13

Proposed Lead Plaintiff Wayne County Employees' Retirement System ("Wayne County") and Oklahoma Law Enforcement Retirement System ("OLERS") respectfully submit this Memorandum of Law pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), in support of their motion for the entry of an Order: (i) appointing Wayne County and OLERS as Lead Plaintiff; (ii) approving Wayne County and OLERS' selection of Labaton Sucharow LLP ("Labaton Sucharow") and Cohen Milstein Sellers & Toll PLLC ("Cohen Milstein") as Lead Counsel for the Class (as defined herein); and (iii) granting such other and further relief as the Court may deem just and proper.

## PRELIMINARY STATEMENT

Presently pending before the Court is a securities class action (the "Action") brought on behalf of all those who purchased or otherwise acquired Insperity, Inc. ("Insperity" or the "Company") common stock during the period February 11, 2019 through February 11, 2020, inclusive (the "Class Period"), and were damaged thereby (the "Class"). The Action, which has been brought against Insperity and certain of the Company's current senior executives (collectively, "Defendants"), alleges violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5, promulgated thereunder.

Under the PSLRA, this Court is to appoint the "most adequate plaintiff" to serve as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(i). In that regard, the Court is required to determine which member of the Class has the "largest financial interest" in the relief sought in this litigation, and also whether that movant has made a *prima facie* showing that it is a typical and adequate Class representative under Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

Wayne County and OLERS, two sophisticated institutional investors, respectfully submit that they should be appointed Lead Plaintiff because they have the "largest financial interest" in this litigation and have made the requisite showing of typicality and adequacy required by the standards of the PSLRA.  As set forth in detail below, Wayne County and OLERS incurred *$786,100.90* in losses as a result of their relevant Class Period transactions in Insperity common stock.[1]  In light of this significant loss, Wayne County and OLERS have a substantial financial interest in the relief sought by this litigation—an interest believed to be greater than that of any competing movant.  In addition to asserting the largest financial interest, Wayne County and OLERS readily satisfy the relevant requirements of Rule 23 because their claims are typical of those of all members of the Class and they will fairly and adequately represent the interests of the Class.

Moreover, Wayne County and OLERS are a paradigmatic Lead Plaintiff under the PSLRA because they are sophisticated institutional investors with a real financial interest in the litigation, and have extensive experience supervising the work of outside counsel in securities litigation—including in groups with other institutional investors.  *See* Joint Declaration, McConville Decl. Ex. C.  Wayne County and OLERS fully understand the Lead Plaintiff's obligations to the Class under the PSLRA, and have amply demonstrated their commitment and ability to fulfill those responsibilities here.

---

[1] A Copy of the PSLRA-required Certifications of Wayne County and OLERS, signed by Gerard Grysko, as Deputy Director of Wayne County, and Duane Michael, as Executive Director of OLERS, respectively, are attached as Exhibit A to the accompanying Declaration of Francis P. McConville ("McConville Decl."), which sets forth all transactions for Wayne County and OLERS in Insperity common stock during the Class Period.  In addition, a chart reflecting the calculation of Wayne County and OLERS' losses as a result of their Class Period transactions in Insperity common stock is attached as Exhibit B to the McConville Decl.

Finally, the adequacy of Wayne County and OLERS is demonstrated through their selection of Labaton Sucharow and Cohen Milstein, law firms with substantial experience in successfully prosecuting securities class actions, to serve as Lead Counsel for the Class. Accordingly, Wayne County and OLERS respectfully request that the Court appoint them Lead Plaintiff and otherwise grant their motion.

## FACTUAL BACKGROUND

Insperity provides human resource services and employee benefits to small and medium-sized business customers, including group health insurance plans.  A majority of these plans are provided by UnitedHealthcare Insurance Company ("UnitedHealthcare").  According to Insperity, it considers the UnitedHealthcare offering to be one of the "most significant elements of [its] employee benefits package."  Under its contract with UnitedHealthcare, Insperity is liable for plan costs (primarily medical claims from its customers' employees) that exceed the fixed premiums paid and owed to UnitedHealthcare.  Therefore, Insperity's ability to properly estimate and report its medical claims expense is important to its investors.

On February 11, 2019, the start of the Class Period, Insperity reported its fourth quarter and full-year 2018 financial results, which results were up significantly year-over-year. Additionally the Company offered bullish full-year 2019 guidance.  Likewise, on April 29, 2019, Insperity reported "record" first quarter results, and raised its full-year 2019 guidance. Therefore, at least according to Defendants' narrative, Insperity was poised to deliver a record year of growth as a result of the Company's successful business model.  As a result, Insperity's stock price dramatically increased during the first half of 2019.

Unknown to the market at this time, however, was that Defendants' statements were materially false and misleading.  Specifically, Defendants failed to disclose, and would continue

3

to omit, the following adverse facts pertaining to the Company's business, operations, and financial condition, which were known to or recklessly disregarded by Defendants: (i) the Company had failed to negotiate appropriate rates with its customers for employee benefit plans and did not adequately disclose the risk of large medical claims from these plans; (ii) Insperity was experiencing an adverse trend of large medical claims; (iii) as a mitigating measure, the Company would be forced to increase the cost of its employee benefit plans, causing stunted customer growth and reduced customer retention; and (iv) the foregoing issues were reasonably likely to, and would, materially impact Insperity's financial results.

The truth about Insperity's deceptive business practices was revealed through a series of disclosures. First, on July 29, 2019, Insperity released its second quarter 2019 financial results. Despite delivering year-over-year growth and meeting analysts' estimates, the Company offered disappointing third quarter 2019 guidance and reduced its full-year 2019 guidance. Further, Defendants revealed that in the second quarter 2019, Insperity had experienced an increase in large medical claim costs, which Defendants described as an anomaly which would not impact projected cost benefit trends. On this news, Insperity shares fell $35.74 per share, or 25 percent.

Second, on November 4, 2019, Insperity released its third quarter 2019 financial results, which substantially missed analysts' estimates and were materially down year-over-year. In addition, Insperity materially reduced its full-year 2019 guidance. Defendants attributed these results to continued large medical claim costs, which they again attempted to describe as a mere anomaly to assuage investor concern. On this news, Insperity shares fell by $36.29 per share, or 34 percent.

Finally, on February 11, 2020, after the close of trading, Insperity released its fourth quarter and full-year 2019 financial results. While the Company's results were in line with its

4

(repeatedly downgraded) financial forecasts, Insperity revealed that large medical claims had *again* impacted the Company by significantly increasing operational costs. Further, the Company stated that it had restructured its contract with UnitedHealthcare to no longer have financial responsibility for any medical claims over $1 million. Finally, Insperity offered disappointingly bearish guidance for the first quarter and full-year 2020. Analysts immediately lowered their views on Insperity stock. For example, analysts at Baird cut their rating from "Outperform" to "Neutral" stating that "after three quarters, rising jumbo claims appear to be a trend, not aberrational." On this news, Insperity shares declined by $17.44 per share, or 20 percent.

As a result, Wayne County and OLERS and the Class have been damaged from Defendants' alleged violations of the U.S. securities laws.

## ARGUMENT

### I.   WAYNE COUNTY AND OLERS SHOULD BE APPOINTED LEAD PLAINTIFF

Wayne County and OLERS respectfully submit that they should be appointed Lead Plaintiff because they filed the instant motion in a timely manner, believe they have the largest financial interest in this litigation of any qualified movant, and satisfy the typicality and adequacy requirements of Rule 23.

#### A.   The PSLRA Standard For Appointing Lead Plaintiff

The PSLRA provides a straightforward procedure for selecting a lead plaintiff for "each private action arising under [the Securities Act or the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(l); *see also* 15 U.S.C. § 78u-4(a)(3)(B) (setting forth procedure for selecting lead plaintiff). First, Section 21D(a)(3)(A)(i) of the Exchange Act, as amended by the PSLRA, specifies that:

> Not later than 20 days after the date on which the complaint is filed, the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class–
>
> (I)       of the pendency of the action, the claims asserted therein, and the purported class period; and
>
> (II)       that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.

15 U.S.C. § 78u-4(a)(3)(A)(i).

Next, pursuant to the PSLRA, a court is to consider any motion made by class members to serve as lead plaintiff and appoint the "most adequate plaintiff." 15 U.S.C. § 78u-4(a)(3)(B)(i). In adjudicating a lead plaintiff motion, a court shall adopt a presumption that the "most adequate plaintiff" is the person who: (i) filed a complaint or made a motion to serve as lead plaintiff; (ii) has the largest financial interest in the relief sought by the class; and (iii) who otherwise satisfies the requirements of Rule 23. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). This presumption may be rebutted only by "proof" that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *see also Rhode Island Laborers' Pension Fund v. FedEx Corp.*, No. 19-CV-5990 (RA), 2019 WL 5287997, at *1 (S.D.N.Y. Oct. 18, 2019) (discussing qualifications for lead plaintiff presumption); *Faig v. BioScrip, Inc.*, No. 13 Civ. 06922(AJN), 2013 WL 6705045, at *2 (S.D.N.Y. Dec. 19, 2013) (same).

### B.       Wayne County and OLERS Are The "Most Adequate Plaintiff"

#### 1.       Wayne County and OLERS' Motion Is Timely

Wayne County and OLERS filed this motion to serve as Lead Plaintiff in a timely manner. Pursuant to 15 U.S.C. § 78u-4(a)(3)(A)(i), the plaintiff in this litigation published

6

notice on *Business Wire* on July 21, 2020, the day the complaint in the Action was filed.  *See* Notice, McConville Decl., Ex. D.  The notice, in accordance with the PSLRA, indicated that applications for Lead Plaintiff must be made no later than 60 days from the date on which the notice was published, *i.e.*, September 21, 2020.  Wayne County and OLERS filed this motion seeking appointment as Lead Plaintiff within this deadline and thus have satisfied the procedural requirements of the PSLRA.

### 2. Wayne County and OLERS Have the Largest Financial Interest

The PSLRA instructs the court to adopt the rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  As demonstrated herein, Wayne County and OLERS suffered losses of approximately ***$786,100.90*** on their relevant transactions in Insperity common stock.  *See* McConville Decl., Exs. A & B.  To the best of Wayne County and OLERS'  knowledge, there is no other applicant seeking Lead Plaintiff appointment asserting a larger financial interest in the litigation.  Accordingly, Wayne County and OLERS have the largest financial interest of any qualified movant seeking Lead Plaintiff status and are the presumptive "most adequate plaintiff."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *Bevinal v. Avon Prods., Inc.*, No. 19 Civ. 1420 (CM), 2019 WL 2497739, at *1 (S.D.N.Y. June 3, 2019) (finding the movant with the largest financial interest to be the presumptive "most adequate plaintiff").

### 3. Wayne County and OLERS Satisfy Rule 23's Typicality and Adequacy Requirements

The PSLRA further provides that in addition to possessing the largest financial interest in the outcome of the litigation, a lead plaintiff must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *see also Avon*

*Prods., Inc.*, 2019 WL 2497739, at \*1.  At the lead plaintiff selection stage all that is required to satisfy Rule 23 is a preliminary showing that the lead plaintiff's claims are typical and adequate. *See Peifa Xu v. Gridsum Holding Inc.*, No. 18 Civ. 3655 (ER), 2018 WL 4462363, at \*4 (S.D.N.Y. Sept. 17, 2018) ("[A]t this stage of the litigation, a moving plaintiff must only make a preliminary showing that the adequacy and typicality requirements have been met."). (citation and internal quotation marks omitted).

### (i)   Wayne County and OLERS' Claims Are Typical

Wayne County and OLERS' claims are typical of those of the Class.  Typicality is satisfied where the movant's "claims arise from the same conduct from which the other class members' claims and injuries arise." *Hom v. Vale, S.A.*, No. 1:15-cv-9539-GHW, 2016 WL 880201, at \*6 (S.D.N.Y. Mar. 7, 2016) (citation omitted).  Here, Wayne County and OLERS have suffered the same injuries arising from the same course of events as all members of the Class, and therefore their legal arguments to prove Defendants' liability are substantively identical.  Like all other Class members, Wayne County and OLERS: (i) purchased Insperity common stock during the Class Period; (ii) at prices artificially inflated by Defendants' materially false and misleading statements and/or omissions; and (iii) were damaged as a result. *See id.* (typicality satisfied where movant purchased "shares at artificially inflated prices during the class period, and were injured by the false and misleading statements and omissions made by defendants in violation of federal securities laws").  As such, Wayne County and OLERS satisfy the typicality requirement of Rule 23.

### (ii)   Wayne County and OLERS Will Fairly and Adequately Protect the Interests of the Class

The adequacy of representation requirement of Rule 23(a)(4) is satisfied when a representative party establishes that it "will fairly and adequately protect the interests of the

8

class." Fed. R. Civ. P. 23(a)(4). In order for the Class' interests to be fairly and adequately represented, the movant must show that: "(1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy." *Vale*, 2016 WL 880201, at *6 (citation omitted); *Bioscrip, Inc.*, 2013 WL 6705045, at *3.

Wayne County and OLERS satisfy these elements because their substantial financial stake in the litigation provide them with the incentive to vigorously represent the Class' claims. *See Lipetz v. Wachovia Corp.*, No. 08 Civ. 6171 (RJS), 2008 WL 4615895, at *3 (S.D.N.Y. Oct. 10, 2008) (noting investor's "substantial financial stake in the litigation" suggests that it would "vigorously" prosecute claims on behalf of the class). Further, Wayne County and OLERS' interests are perfectly aligned with those of the other Class members and are not antagonistic in any way. There are no facts to suggest any actual or potential conflict of interest or other antagonism between Wayne County and OLERS and other Class members. In addition, Wayne County and OLERS have retained counsel highly experienced in prosecuting securities class actions vigorously and efficiently, *see infra* Section II, and timely submitted its choice to the Court for approval, in accordance with the PSLRA. *See* 15 U.S.C. §§ 78u-4(a)(3)(A)(i)(II) and 15 U.S.C. §§ 78u-4(a)(3)(B)(v). Finally, there is no proof that Wayne County and OLERS are "subject to unique defenses that render such plaintiff incapable of representing the class," because no such proof exists. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). Accordingly, Wayne County and OLERS satisfy the adequacy requirement.

**4.      Wayne County and OLERS Are Precisely the Type of Lead Plaintiff Envisioned by the PSLRA**

In addition to satisfying the requirements of Rule 23, Wayne County and OLERS—sophisticated institutional investors—are precisely the type of investor Congress sought, through the enactment of the PSLRA, to encourage to assume a more prominent role in securities litigation. *See* H.R. Conf. Rep. No. 104-369, at 34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733 ("The Conference Committee believes that increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions."). Congress reasoned that increasing the role of institutional investors, which typically have a large financial stake in the outcome of the litigation, would be beneficial because institutional investors with a large financial stake are more apt to effectively manage complex securities litigation. *See id.* at 34–35, *reprinted in* 1995 U.S.C.C.A.N. at 733-34. To this end, many courts, including courts in this District, have recognized that the legislative history reflects a clear preference for institutional investors to be appointed as lead plaintiff in securities class actions. *See Glauser v. EVCI Career Colls. Holding Corp.*, 236 F.R.D. 184, 188 (S.D.N.Y. 2006) (noting that "the PSLRA was passed, at least in part, to increase the likelihood that institutional investors would serve as lead plaintiffs in [securities class] actions") (citation omitted).

Based on their past experience successfully serving as lead plaintiffs alongside other institutional investors, Wayne County and OLERS are both well-aware of the Lead Plaintiff's duties, including the responsibility to oversee and supervise the litigation separate and apart from counsel. *See* McConville Decl. Ex. C ¶¶ 3, 5. To this end, Wayne County and OLERS have submitted sworn Certifications and a Joint Declaration attesting to their willingness and ability to fulfill those duties here. *See* McConville Decl. Exs. A & C; *see also In re Bank of Am. Corp.*

10

*Sec., Derivative & ERISA Litig.*, 258 F.R.D. 260, 270 (S.D.N.Y. 2009) ("Groups of plaintiffs are specifically permitted by the PLSRA to be appointed lead plaintiff. . . . Because they have established their ability to act independent of counsel, [the institutional investors] are a proper group and are presumptive lead plaintiffs.").

As set forth in their Joint Declaration, Wayne County and OLERS are sophisticated institutional investors, with combined assets under management of approximately $2.7 billion, who also possess extensive experience and success serving as lead plaintiffs alongside other institutional investors. McConville Decl. Ex. C ¶¶ 2-5. They have demonstrated their willingness, resources, and ability to fulfill the Lead Plaintiff's obligations under the PSLRA and their commitment to working cohesively together in the prosecution of this action. *Id.* ¶¶ 6, 11, 18. Indeed, Wayne County and OLERS' decision move for joint leadership of this case is informed by their past experience successfully prosecuting securities class actions in cohesive groups of sophisticated institutional investors. *Id.* ¶ 8.

Moreover, Wayne County and OLERS have already taken measures to ensure the claims are vigorously and effectively prosecuted in the best interests of the Class. For example, as part of their effort to formalize their oversight of this action and before seeking appointment as Lead Plaintiff, representatives of Wayne County and OLERS held a conference call on September 21, 2020, in which they discussed the strength of the claims against Defendants, their strategy for prosecuting the action, the benefits that the Class will receive from the leadership of institutional investors with prior experience serving as Lead Plaintiff under the PSLRA, and the measures the funds have and will take to ensure that the Class' claims will be zealously and efficiently litigated. *Id.* ¶ 10. Among other things, Wayne County and OLERS directed their proposed Lead Counsel to enter into a joint prosecution agreement that outlines their respective

responsibilities and ensures there will be no duplication of effort and that the claims of the Class are prosecuted vigorously yet efficiently and in a cost-effective manner. *Id.* ¶ 15. Wayne County and OLERS have further instructed their proposed Lead Counsel to provide this joint prosecution agreement to the Court for *in camera* review, should it so choose. *Id.* Further, while Wayne County and OLERS appreciate that any attorneys' fees in this action, if any, will be set by the Court, they take very seriously their obligation as Lead Plaintiff and have executed retainer agreements that limit the fees counsel may request. *Id.* ¶ 16. Through these measures and others, Wayne County and OLERS have sought to ensure the Class will receive the best possible representation.

In sum, Wayne County and OLERS have demonstrated their willingness, resources, experience, and commitment to working closely with one another to supervise Lead Counsel and obtain the best possible recovery for the Class. In other words, Wayne County and OLERS are precisely the type of institutional investors that Congress sought to empower as Lead Plaintiff when enacting the PSLRA. *See, e.g., Mustafin v. GreenSky, Inc.*, No. 18 Civ. 11071(PAE), 2019 WL 1428594, at *5 (S.D.N.Y. Mar. 29, 2019) (appointing group of three institutions that "pledge[d] to work closely together to vigorously prosecute the claims on behalf of the class"); *In re Bank of Am.*, 258 F.R.D. at 270 (appointing group of institutions as lead plaintiff that submitted declaration detailing discussions regarding "plans for joint oversight over the litigation and joint supervision of counsel"); *Reimer v. Ambac Fin. Grp., Inc.*, No. 08 Civ. 411(NRB), 2008 WL 2073931, at *3 (S.D.N.Y. May 9, 2008) (appointing group of institutions that demonstrated they were "cooperating and pursuing the litigation separately and apart from their lawyers").

12

## II.    WAYNE COUNTY AND OLERS' SELECTION OF COUNSEL MERITS APPROVAL

The PSLRA vests authority in the Lead Plaintiff to select lead counsel, subject to the approval of the Court.  15 U.S.C. § 78u-4(a)(3)(B)(v); *In re Cendant Corp. Litig.*, 264 F.3d 201, 276 (3d Cir. 2001) (stating that "the Reform Act evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention").  Consistent with Congressional intent, a court should not disturb the lead plaintiff's choice of counsel unless it is "necessary to protect the interests of the plaintiff class."  *See* H.R. Conf. Rep. No. 104-369, at 35 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 734.  Here, Wayne County and OLERS have selected Labaton Sucharow and Cohen Milstein to serve as Lead Counsel for the Class.

Labaton Sucharow has excelled as lead counsel in numerous landmark securities class actions on behalf of defrauded investors.  For example, Labaton Sucharow served as lead counsel in *In re American International Group, Inc. Securities Litigation*, No. 04-cv-8141 (S.D.N.Y.), in which it achieved a recovery totaling more than $1 billion for injured investors, and secured a $294.9 million recovery in *In re Bear Stearns Cos., Inc. Securities, Derivative, & ERISA Litigation*, No. 08-md-1963 (S.D.N.Y.), in which the Firm served as co-lead counsel.  Labaton Sucharow also served as co-lead counsel in *In re Satyam Computer Services Ltd. Securities Litigation*, No. 09-md-2027 (S.D.N.Y.), through which it helped recover from the company and its auditors a total of $150.5 million for class members.  Labaton Sucharow presently serves as lead counsel in several significant investor class actions.  *See* Labaton Sucharow Firm Resume, McConville Decl., Ex. E.

Similarly, Cohen Milstein is a firm with undisputed skill in litigating securities fraud class actions.  It has worldwide expertise as counsel for U.S. and non-U.S. institutional investors

13

who have been the victims of securities fraud. By applying innovative legal theories and litigation strategies, it has recovered billions of dollars for its clients in some of the largest and most complex securities class actions. Indeed, in this Circuit, Cohen Milstein has recovered hundreds of millions of dollars for investors, including a $275 million settlement in a mortgage-backed securities class action against the Royal Bank of Scotland (*New Jersey Carpenters Health Fund v. The Royal Bank of Scotland Grp., plc*, No. 08-cv-05310-DAB-HBP (S.D.N.Y.)); $335 million in settlements in a class action against Residential Accredit Loans, Inc. and various investment banks (*New Jersey Carpenters Health Fund v. Residential Capital, LLC*, No. 08-cv-8781 (HB) (S.D.N.Y.)); and a $90 million settlement in a class action against MF Global (*Rubin v. MF Global, Ltd.*, No. 08-cv-2233 (VM) (S.D.N.Y.)), among others. *See* Cohen Milstein Firm Resume, McConville Decl. Ex. F.

Accordingly, the Court may be assured that, by granting Wayne County and OLERS' motion, the Class will receive the highest caliber of legal representation.

## CONCLUSION

For the foregoing reasons, Wayne County and OLERS respectfully request that the Court grant their motion and enter an Order: (i) appointing Wayne County and OLERS as Lead Plaintiff; (ii) approving Wayne County and OLERS' selection of Labaton Sucharow and Cohen Milstein as Lead Counsel for the Class; and (iii) granting such other and further relief as the Court may deem just and proper.

DATED:  September 21, 2020

Respectfully submitted,

*/s/ Francis P. McConville*

**LABATON SUCHAROW LLP**
Christopher J. Keller
Eric J. Belfi
Francis P. McConville
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile:  (212) 818-0477
ckeller@labaton.com
ebelfi@labaton.com
fmcconville@labaton.com

**COHEN MILSTEIN SELLERS & TOLL PLLC**
Steven J. Toll
Susan G. Taylor
1100 New York Ave., N.W. Suite 500
West Tower
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
stoll@cohenmilstien.com
sgtaylor@cohenmilstein.com

*Counsel for Proposed Lead Plaintiff and
Proposed Lead Counsel for the Class*

15