**ROBBINS GELLER Rudman & Dowd LLP**

| Boca Raton | Melville | San Diego |
| Chicago | Nashville | San Francisco |
| Manhattan | Philadelphia | Washington, D.C. |

Daniel J. Pfefferbaum
dpfefferbaum@rgrdlaw.com

June 10, 2021

The Honorable Naomi Reice Buchwald                                    VIA ECF
United States District Judge
United States Courthouse
500 Pearl Street, Courtroom 21A
New York, NY  10007-1312

> Re:  *Building Trades Pension Fund of Western Pennsylvania v. Insperity, Inc. et al.*
> No. 1:20-cv-05635-NRB (S.D.N.Y.)

Dear Judge Buchwald:

Plaintiffs respond in opposition to defendants' motion to dismiss the Complaint, which alleges violations §10(b) and §20(a) of the Exchange Act of 1934 and SEC Rule 10b-5.[1]  ECF Nos. 51-54.  As set forth in plaintiffs' opposition briefing, the Complaint lays out particularized facts alleging that defendants made knowing material misrepresentations regarding Insperity's current operations and financial position.  Defendants' motion fails to address many of these statements, refuses to acknowledge the import of defendants' own admissions, and improperly seeks to avoid liability through misapplication of the law.  The motion should be denied.[2]

## I.    The Complaint Sufficiently Alleges that Defendants Made Actionable False and Misleading Statements

Plaintiffs have pleaded sufficient facts to allege that defendants' statements were false and misleading and the reasons why.  *Abramson v. Newlink Genetics Corp.*, 965 F.3d 165, 173 (2d Cir. 2020).  First, the Complaint alleges that defendants repeatedly touted their sales people (Business Performance Advisors or "BPAs") as the key metric driving Insperity's growth but concealed that the Company had too few BPAs the entire year.  ¶101.  For instance, at the start of the Class Period, defendants announced that BPA retention was at an all-time high and supported their aggressive outlook.  ¶61.  When BPA growth missed targets in 1Q19 and 2Q19, defendants repeatedly assured investors they were "where we intend to be."  ¶¶73, 86, 90.  But by November 2019, as the Company missed on every financial metric, defendants admitted they always had too few BPAs and were unsuccessfully trying to increase hiring the entire Class Period.  ¶101.  Falsity is alleged.  *City of Austin Police Ret. Sys. v. Kinross Gold Corp.*, 957 F. Supp. 2d 277, 301 n.6 (S.D.N.Y. 2013) ("a material misstatement of fact is alleged by pointing to the true fact about the world that contradicts the misstatement").

---

[1]   "Plaintiffs" refers to Lead Plaintiff Oakland County Employees' Retirement System and Oakland County Voluntary Employees' Beneficiary Association Trust and the additional named plaintiffs.  "Defendants" refers collectively to Insperity, Inc. ("Insperity" or "Company"), Paul J. Sarvadi and Douglas S. Sharp.  All "¶_" references are to Plaintiff's Corrected Amended Complaint for Violations of the Federal Securities Laws (ECF No. 37) ("Complaint").  The "Class Period" is between February 11, 2019 and February 11, 2020, inclusive.

[2]   Plaintiffs respectfully request oral argument related to defendants' motion to dismiss the Complaint.

One Montgomery Street   Suite 1800   San Francisco, CA 94104   Tel 415-288-4545   Fax 415-288-4534   rgrdlaw.com

**Robbins Geller
Rudman & Dowd** LLP

The Honorable Naomi Reice Buchwald
June 10, 2021
Page 2

Second, defendants falsely touted their ongoing evaluation and look-though into medical claims costs while omitting that they did not have timely access to medical claims data. ¶104. In February 2019, defendants stated that the Company evaluated its medical claims experience on an ongoing basis. ¶¶60-61, 64-65. When elevated claims emerged in 2Q19, defendants minimized it as an anomaly and insisted claims would normalize based on their view of where claims were at currently. ¶¶87-88. After another quarter of increased claims, defendants admitted the truth: The insurance carriers never gave them claims data during the quarter, Insperity had to wait until after the quarter ended to evaluate claims, and they had no early warning system. ¶104. Defendants admitted their prior assurances that claims would normalize had no basis. ¶130; *In re Nielsen Holdings PLC Sec. Litig.*, __ F. Supp. 3d __, 2021 WL 22722, at *12 (S.D.N.Y. Jan 4, 2021) (assurances that the company "had access to all of the data it needed" when later admission showed that they did not, was materially misleading).

Third, as increased medical claims began to erode earnings, defendants immediately pushed back on concerns of a cost/price mismatch, *i.e.*, medical claims cost exceeding premiums collected. ¶¶88, 106, 115. To calm investors, defendants stated that they had not increased pricing, and sales were ahead of schedule and accelerating, and the Company was on track for double digit growth. ¶¶86, 89-90. But then, in November 2019, defendants partially revealed the truth: While the number of new sales was close to the prior year, the size of those sales was smaller. ¶102. Nonetheless, defendants continued to claim there were no issues with increased pricing and that client renewals were ahead of plan. ¶¶105-106, 114-115. But the opposite was true. The Company had been raising prices to make up for increased medical costs and, when they did, existing clients did not renew and new business dried up. ¶¶123, 128. As a result, defendants' entire business required a growth reset and a return to fundamentals. Double-digit growth was gone until at least 2021. ¶126; *Emps.' Ret. Sys. of Gov't of the V.I. v. Blanford*, 794 F.3d 297, 306 (2d Cir. 2015) (finding that "fourth quarter revenue gap is indicative of a 'false growth story'").

## II.    The Complaint Sufficiently Alleges a Strong Inference of Scienter

Defendants' admitted that they knew facts contradicting their public statements, which is sufficient to plead scienter. *In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 76 (2d Cir. 2001). For example, defendants admitted that they knew BPA numbers were too low from the outset and they had struggled the whole year to hire more BPAs. ¶100. Sarvadi had hoped that an increase in large sales would conceal this problem. *Id.* This is fraud, not fraud by hindsight, as defendants argue. *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 254 (5th Cir. 2009) (Admissions "directly and cogently tend to prove [defendants'] state-of-mind at the time of their misleading statements and omissions.").

There is no dispute that defendants never had ongoing access medical claims or an indication of claims development during the quarter. Yet, defendants touted their review of claims to investors; and later, when claims increased, told investors they would normalize and predictability was excellent. ¶¶64, 75, 87, 104. This is sufficient for scienter as defendants chose "to disclose incomplete and misleading information" raising a strong inference that defendants acted at least recklessly. *Setzer v. Omega Healthcare Invs., Inc.*, 968 F.3d 204, 215 (2d Cir. 2020). In light of these allegations, defendants are left arguing that "ongoing" doesn't actually mean

**Robbins Geller
Rudman & Dowd** LLP

The Honorable Naomi Reice Buchwald
June 10, 2021
Page 3

"ongoing" and (as would come as a shock to analysts and investors) that defendants actually disclosed their lack of timely access to data. These arguments are of no merit.

Finally, defendants concealed that the Company suffered from a cost/price mismatch at the same time they were trying to correct for it. ¶¶122-125, 128. Defendants repeatedly stated that sales and renewals were above the prior year and denied that they had a cost/price mismatch. ¶¶85-86, 89-90, 122-125, 128, 134. However, in truth, clients were leaving and new sales were not being made because they were raising prices. ¶¶105-106. This is adequate to plead scienter. *Novak v. Kasaks*, 216 F.3d 300, 308 (2d Cir. 2000) (egregious refusal to see the obvious or to investigate the doubtful, may give rise to an inference of recklessness).

### III.    Defendants' Arguments Do Not Overcome Plaintiffs' Well-Pleaded Complaint

Instead of addressing their own admissions, defendants try to carve up the Complaint by ignoring context, muddling the statements, and interjecting improper factual disputes. But they ignore the root of the misrepresentations that defendants knew facts contradicting their false and misleading statements. Defendants' arguments do not undermine the facts alleged.

Defendants argue that certain statements are forward looking subject to the safe harbor but, in fact, they are actionable because the safe harbor "does not apply to any 'allegedly false statement [that] has both a forward-looking aspect and an aspect that encompasses a representation of present fact,'" as is present here. MTD at 11; *In re Salix Pharms. Ltd.*, 2016 WL 1629341, at *9 (S.D.N.Y. Apr. 22, 2016). For example, defendants argue that a portion of an alleged false statement is forward looking ("expecting around 13% increase [in trained BPAs]") while ignoring the false statement of current condition ("we're basically where we intend to be [with BPAs]"). ¶73.

Alternatively, defendants claim their statements are opinions subject to a higher pleading standard, but this is inapplicable to many statements. *See, e.g.*, ¶89 ("we are above last year in sales for the year"); ¶106 ("'we don't have . . . a cost price mismatch"). Even if the Court were to consider other alleged misrepresentations to be opinions, defendants ignore the "embedded factual statements that can be proven false" and the omissions of "critical context, implied facts that can be proven false," including the failure to disclose that the Company had too few BPAs throughout the year and never had timely access to medical claims data. *Abramson*, 965 F.3d at 175-76.

In the end, defendants' motion misconstrues the facts, and law, and ignores the revelations that sent the stock plummeting, losing over half its value and causing massive investor losses. For the reasons summarized herein, and set forth more fully in the opposition briefing, the Court should deny defendants' motion to dismiss.

Respectfully submitted,

DANIEL J. PFEFFERBAUM

DJP:tdv

4848-6378-5966.v1