UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BUILDING TRADES PENSION FUND OF
WESTERN PENNSYLVANIA, Individually and
on Behalf of All Others Similarly Situated,

Plaintiff,

vs.

INSPERITY, INC., PAUL J. SARVADI and
DOUGLAS S. SHARP,

Defendants.

Case No. 1:20-cv-05635-NRB

**REPLY MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S
CORRECTED AMENDED COMPLAINT**

TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................................ iii

I.    INTRODUCTION ........................................................................................................... 1

II.   ARGUMENT & AUTHORITIES ....................................................................................... 2

      A.    The Opposition fails to mask the CAC's lack of traditional indicia of scienter with a cognizable "admission." ................................................................ 2

      B.    The Opposition's additional scienter theories miss the mark. ............................... 6

            1.    The CAC alleges no "gross misrepresentation" of the truth. ...................... 6

            2.    The Opposition's "detailed discussions" theory does not move the needle. ............................................................................................................ 8

            3.    The Opposition's "temporal proximity" theory is baseless. ....................... 9

      C.    The Opposition does nothing to realign the competing inferences in favor of scienter. ............................................................................................................ 10

III.  CONCLUSION ............................................................................................................. 10

**TABLE OF AUTHORITIES**

**Page(s)**

CASES

*Bettis v. Aixtron SE*,
  2016 WL 7468194 (S.D.N.Y. Dec. 20, 2016) ............................................................................9

*Born v. Quad/Graphics, Inc.*,
  2021 WL 736839 (S.D.N.Y. Feb. 25, 2021).............................................................................10

*Carlton v. Cannon*,
  184 F. Supp. 3d 428 (S.D. Tex. 2016) .......................................................................................2

*Curtis Engine & Equip., Inc. v. Cummins Engine Co., Inc.*,
  1997 WL 835051 (D. Md. Oct. 30, 1997) ..................................................................................5

*Frankfurt-Tr. Inv. Luxemburg AG v. United Techs. Corp.*,
  336 F. Supp. 3d 196 (S.D.N.Y. 2018), *aff'd*, 779 F. App'x 69 (2d Cir. 2019).........................5

*Furher v. Ericsson LM Tel. Co.*,
  363 F. App'x 763 (2d Cir. 2009) ................................................................................................6

*Glaser v. The9, Ltd.*,
  772 F. Supp. 2d 573 (S.D.N.Y. 2011).........................................................................................3

*Haw. Structural Ironworkers Pension Tr. Fund v. AMC Ent. Holdings, Inc.*,
  422 F. Supp. 3d 821 (S.D.N.Y. 2019).........................................................................................9

*In re Adient plc Sec. Litig.*,
  2020 WL 1644018, at *22 (S.D.N.Y. Apr. 2, 2020)....................................................................2

*In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*,
  324 F. Supp. 2d 474 (S.D.N.Y. 2004).........................................................................................8

*In re Dynagas LNG Partners LP Sec. Litig.*,
  504 F. Supp. 3d 289 (S.D.N.Y. 2020).........................................................................................2

*In re eSpeed, Inc. Sec. Litig.*,
  457 F. Supp. 2d 266 (S.D.N.Y. 2006).........................................................................................3

*In re Fairway Grp. Holdings Corp. Sec. Litig.*,
  2015 WL 4931357 (S.D.N.Y. Aug. 19, 2015),
  *R&R adopted*, 2015 WL 5255469 (S.D.N.Y. Sept. 9, 2015)....................................................2

*In re Nielsen Holdings PLC Securities Litigation*,
  2021 WL 22722 (S.D.N.Y. Jan. 4, 2021) ...............................................................................4, 5

*In re Supercom Inc. Sec. Litig.*,
    2018 WL 4926442 (S.D.N.Y. Oct. 10, 2018) ..............................................................9

*Institutional Inv'rs Grp. v. Avaya, Inc.*,
    564 F.3d 242 (3d Cir. 2009)......................................................................................9

*Mahoney v. Found. Med., Inc.*,
    342 F. Supp. 3d 206 (D. Mass. 2018) .......................................................................1

*Pearlstein v. BlackBerry Ltd.*,
    93 F. Supp. 3d 233 (S.D.N.Y. 2015), *aff'd in part, vacated in part on other grounds*,
    660 F. App'x 23 (2d Cir. 2016) ................................................................................9

*Reese v. Malone*,
    747 F.3d 557 (9th Cir. 2014) ....................................................................................9

*Reilly v. U.S. Physical Therapy, Inc.*,
    2018 WL 3559089 (S.D.N.Y. July 23, 2018) ...........................................................8

*Ret. Sys. v. MF Glob., Ltd.*,
    620 F.3d 137 (2d Cir. 2010)......................................................................................9

*S.E.C. v. StratoComm Corp.*,
    2 F. Supp. 3d 240 (N.D.N.Y. 2014).........................................................................6

*Setzer v. Omega Healthcare Invs., Inc.*,
    968 F.3d 204 (2d Cir. 2020)......................................................................................7

*Shields v. Citytrust Bancorp, Inc.*,
    25 F.3d 1124 (2d Cir. 1994)....................................................................................10

*Tongue v. Sanofi*,
    816 F.3d 199 (2d Cir. 2016)......................................................................................2

*Welgus v. TriNet Grp., Inc.*,
    2017 WL 6466264 (N.D. Cal. Dec. 18, 2017),
    *aff'd*, 765 F. App'x 239 (9th Cir. 2019)...................................................................6

## I.    INTRODUCTION

The CAC[1] is deficient from top to bottom, and Plaintiff's Opposition ("Opp.") does nothing to salvage it. To reiterate, the CAC alleges falsity theories that do not identify a discrete, misrepresented *fact*. The CAC instead takes aim at Insperity's inability to meet its FY 2019 financial guidance—in other words, the CAC complains that even though Insperity *grew*, it did not grow as much as it predicted.  But it is well-established that financial predictions do not become actionable misrepresentations simply because hindsight reveals that they were too optimistic. The CAC compounds that error by falling far short of the PSLRA's high bar for pleading scienter, never even mentioning the word, let alone pleading a motive or a contemporaneous, particularized fact on which a cognizable scienter allegation may rest.

Confronted with those shortcomings, the Opposition engages in a tortured effort to further paraphrase and decontextualize the CAC's already paraphrased and decontextualized Challenged Statements.[2] What results is a disjointed game of telephone, where the Opposition's theories bear little resemblance to the content or chronology of the statements that the CAC actually challenges. The Opposition's attempt to cobble together a theory to support the CAC's (non-existent) scienter allegations is similarly deficient, as it must twist and reorder the Challenged Statements and mismatch quotes to invent purported "admissions." The theories that remain either misstate the law or do nothing more than highlight the CAC's deficiencies. The Court should dismiss the CAC with prejudice, giving no effect to the boilerplate, one-sentence request for leave to amend at the end of the Opposition.

---

[1] Unless otherwise noted, all internal quotation marks, citations, and footnotes from quoted material are omitted, and all defined terms are as they were in Defendants' memorandum of law in support of their motion to dismiss. Dkt. 53.
[2] Contrary to the Opposition's assertions, courts routinely rely on charts that, like Appendix A to the Motion, collect the challenged statements. *E.g.*, *Mahoney v. Found. Med., Inc.*, 342 F. Supp. 3d 206, 212 (D. Mass. 2018) (stating that motion to dismiss exhibits, including a "reference table cataloguing the misstatements and omissions alleged in the Amended Complaint and explaining why they are not actionable under Rule 10b–5," were not "argumentative in nature and, in any event, the exhibits are helpful to the Court").

## II.    ARGUMENT & AUTHORITIES

Given page-limit constraints, this Reply focuses on the case-dispositive scienter issue (and the various falsity points the Opposition injects into the scienter analysis). But, to be clear, Defendants in no way concede—and the Opposition fails to rebut—the other equally meritorious grounds raised in the Motion, including the PSLRA's safe harbor,[3] the Supreme Court's test for opinion statements,[4] and the puffery nature[5] of many of the Challenged Statements.

### A.    The Opposition fails to mask the CAC's lack of traditional indicia of scienter with a cognizable "admission."

The Opposition puts up no fight on the CAC's abject failure to plead traditional allegations of scienter—*e.g.*, contemporaneous documents, CW statements, or other contrary facts. *E.g.*, Opp. 24 (suggesting that lack of "contemporaneous data … completely misses the point"). It is similarly silent on a cognizable motive to commit fraud, apart from baselessly

---

[3] The Opposition contends that cautionary language referenced on a conference call does not protect Defendants, Opp. n.11, but "[c]ourts in this Circuit routinely find that references to SEC filings that expound more fully on the risks suffice to adequately convey the risks." *In re Dynagas LNG Partners LP Sec. Litig.*, 504 F. Supp. 3d 289, 319 (S.D.N.Y. 2020). The transcripts contain similar references to Insperity's cautionary language here. *See* Ex. 3, 2/11/19 Q4 Tr., 4 (referencing risk language in 8-K); Ex. 12, 4/29/19 Q1 Tr., 4 (same); Ex. 9, 7/29/1/9 Q2 Tr., 4 (same); Ex. 4, 11/4/19 Q3 Tr., 4 (same); Ex. 13, 2/11/20 Q4 Tr. at 4 (same).

[4] The Opposition attempts to plant false "embedded facts" in Defendants' forward-looking statements and opinions where none exist. Opp. 16–17. As discussed in the Motion and below, *infra* § II, the CAC fails to adequately allege that any of these "facts" were false, let alone false when made. And many of the so-called present or embedded facts are too vague or subjective to be capable of verification and are more appropriately considered opinions themselves. *E.g.*, Opp. 17 (referring to Defendants' purported subjective commentary on the sufficiency of BPAs as an "embedded fact"); *see In re Fairway Grp. Holdings Corp. Sec. Litig.*, 2015 WL 4931357, at *21–22 (S.D.N.Y. Aug. 19, 2015) (applying *Omnicare* and finding statements inactionable where defendants claimed they were "on track" for certain operations and would "leverage [their] well-developed and scalable infrastructure" because they were "too vague to be [embedded facts] and … not alleged to have been false when made"), *R&R adopted*, 2015 WL 5255469 (S.D.N.Y. Sept. 9, 2015). Finally, the Opposition casts aside Defendants' "hedges and disclaimers" and how they bear on *Omnicare*'s omissions prong as unduly "fact-specific and not appropriate at the pleading stage," when in fact the Second Circuit engages in precisely that analysis in considering a Rule 12(b)(6) dismissal. *E.g.*, *Tongue v. Sanofi*, 816 F.3d 199, 211 (2d Cir. 2016).

[5] The Opposition incorrectly focuses on the general importance of certain topics, but "the key inquiry in determining whether a statement amounts to puffery is not whether the topic of a statement was a key to corporate success, but the nature of the specific statement and whether it concretely assured investors of anything." *In re Adient plc Sec. Litig.*, 2020 WL 1644018, at *22 (S.D.N.Y. Apr. 2, 2020). The Challenged Statements here are not sufficiently specific or concrete to mislead reasonable investors. *See* CAC ¶¶ 60, 64, 72, 86, 90, 115. The Opposition also suggests that statements about "our success in hiring" are not puffery because they are "specifically tied to metrics, like 101% in new sales and 11% increase in BPAs." Opp. 19. But those metrics are not alleged to be false, so associated vague optimism misrepresents nothing. *Cf. Carlton v. Cannon*, 184 F. Supp. 3d 428, 494 (S.D. Tex. 2016) (finding vague "promises of progress" not puffery because they were "tethered to" misleading statements).

2

deriding the nonculpable inference of Insperity's substantial stock buybacks during the Class Period as a "version of a fact that defendants are not entitled to raise," Opp. 24 n.14, when in fact "*dozens of cases* dismiss[] complaints on scienter grounds where ... motive allegations were undermined by increases in total holdings." *In re eSpeed, Inc. Sec. Litig.*, 457 F. Supp. 2d 266, 290 n.182 (S.D.N.Y. 2006) (emphasis added).[6]

Without such allegations, the Opposition hinges entirely on flawed falsity theories about Insperity's BPAs and access to claims data, attempting to establish a strong inference of scienter with supposed "admissions."   But even a cursory examination of the Challenged Statements shows that the Opposition's "admissions" are either (1) the byproduct of misleading editing, including re-paraphrasing of the CAC's prior paraphrasing of the Challenged Statements, and jumbling of the Challenged Statements' timing, or (2) "retrospective observations" of the sort courts routinely reject as non-probative of contemporaneous scienter. Mot. 24 (collecting cases).

***BPA Growth.***[7] The Opposition (like the CAC) never explains *why* or *how* the February 11, 2019 statement that Insperity's BPA retention had experienced a "step-up improvement" was false *when made*. Mot. 8. Rather, it splices quotes together to imply that Defendants misrepresented that Insperity's BPA numbers were "right where [they] want to be" when in fact they were at their "lowest point" and Defendants were silently "focused on turning that around." Opp. 8–9, 20. This is demonstrable fiction:

- The "lowest point" statement referred to Insperity's lower-than-expected BPA growth at the end of Q1 2019, when "it dipped down to the 10% to 11%" range, Ex. 6, 11/25/19 Investor Call at 24—something Insperity *accurately reported* at that time. *See* Ex. 12, 4/29/19 Q1 Tr., 5 (reporting "10% increase in trained Business Performance Advisors," which was below 13% "target[]"). That comment, moreover, had nothing to do with Sarvadi's Q4 2018 earnings call statements discussing BPA retention figures for the "full year of 2018." Ex. 3, 2/11/19 Q4 Tr., 6, 12.

---

[6] *See also, e.g.*, *Glaser v. The9, Ltd.*, 772 F. Supp. 2d 573, 593 (S.D.N.Y. 2011) (crediting competing inference of defendants' share repurchases and granting dismissal).
[7] This section also applies to Section III.B.1 of the Opposition.

3

- Likewise, it was anything but a revelation when Insperity confirmed that it had been "focused on turning [] around" those BPA growth figures in the 10% to 11% range, CAC ¶ 90, because Sarvadi said precisely that from the beginning on the Q1 2019 earnings call: "We expect to continue to *ramp up* the number of BPAs . . . *targeting* an average increase in trained BPAs of 13% for the full year." Ex. 12, 4/29/19 Q1 Tr., 5 (emphases added).

- Finally, the "right where we want to be" statement was not directed at Insperity's disappointing 11% BPA growth figure, no matter how much Plaintiff tries to connect the two. Opp. 8. What Sarvadi actually said was: "we were at about 13% at the end of the quarter, for June, year-over-year, and we'll continue to ramp that up to around *14% over the balance of the year*, and that's right where we want to be going into 2020." Ex. 9, 7/29/19 Q2 Tr., 9 (emphasis added).

The Opposition's smoke and mirrors cannot manufacture a factual allegation that Defendants misrepresented the true state of BPA growth—much less an "admission" indicating Defendants' contemporaneous knowledge that any Challenged Statement was false.

*Real-Time Access.*[8] The Opposition presses the theory that Defendants falsely touted their "ongoing access" to large healthcare claims data, only to later admit the lack of such access. Opp. 10–12, 20. But Plaintiff's oft-used phrase "ongoing access" appears *nowhere* in Defendants' statements, nor does any representation of "access to ongoing medical claims data" or any other similar paraphrasing. Opp. 20. Plaintiff's citation to *In re Nielsen Holdings PLC Securities Litigation* only highlights that shortcoming, as defendants there *actually* (and misleadingly) represented their "access" to critical data—specifically, by repeatedly reassuring investors that the European Union's new General Data Protection Regulation would be a "non-event" and that Nielsen "still [had] ... access to all the data [it] need[s]" for its products, only to admit that on the day the regulation went into effect, its clients cut off Nielsen's access to their data, thus shutting off 120 of the company's campaigns. 2021 WL 22722, at *11 (S.D.N.Y. Jan.

---

[8] This section also applies to Section II.B.2 of the Opposition.

4, 2021) (first alteration in original).[9]

Moreover, just like the CAC, the Opposition leaves undisturbed Insperity's 2018 10-K's actual explanation of the basis for estimating incurred medical claims for reporting purposes and the associated cost trend used in the estimates based on "historical experience."[10] Ex. 1, 2018 10-K, 37–38; Mot. 8. And it continues to cling to Defendants' "full picture" reference, stubbornly ignoring the preceding context—prominently highlighted in the Motion—tying that comment to "the effect on pricing of the book of business after accounting for the volume of new sales, client renewals and client terminations occurring," not real-time access to healthcare claims data. Mot. 8 (quoting Ex. 3, 2/11/19 Q4 Tr., 6). Indeed, immediately following the "full picture" comment, Sarvadi referred to the "*other side* of the equation to evaluate" as "the *cost expectations* for these major components." Ex. 3, 2/11/19 Q4 Tr., 6 (emphases added).

Ultimately, the Opposition hitches its wagon to the theory that Defendants' statement that "***[o]n an ongoing basis*** we evaluate [the Company's] insurance claims experience" cannot possibly correspond to a quarterly evaluation based on a quarterly receipt of claims data. Opp. 12. That is nonsense. It is hardly contra-English, or a "special meaning[]," *id.*, for the phrase "ongoing basis" to coincide with a continuing, *periodic* occurrence. Judges (and ordinary people) speak in that manner. *E.g.*, *Curtis Engine & Equip., Inc. v. Cummins Engine Co., Inc.*, 1997 WL

_____

[9] *Nielsen* also serves as a helpful contrast to the CAC's purported "admissions," as the *Nielsen* defendants "[a]dmitted … they *knew*" an undisclosed, negative trend had been present "throughout the year" of 2016. 2021 WL 22722, at *2, *5 (emphasis added) (citing statement "*earlier this year, as we saw these more challenging trends unfolding*"). The *Nielsen* court found those statements probative of *contemporaneous* knowledge of the trend from July 2016 onward (but not any earlier), *id.* at *5–6, whereas the CAC invariably attacks Sarvadi's after-the-fact commentary—through the lens of hindsight—on the company's guidance that turned out to be too optimistic. Mot. 24.

[10] It was because Insperity's large healthcare claims anomalously defied this "historical experience" in multiple consecutive quarters that Sarvadi stated on the Q4 2019 earnings call that Insperity was not going to assume going forward that claims would "snap back in line with the pre-Q2 levels … ***with no basis for it***." CAC ¶ 40. Contrary to the Opposition's misleading suggestion, Opp. 11, Sarvadi's revision of the Company's outlook in light of recent experience was not an "admi[ssion]" that previous guidance was baseless or knowingly false. *See Frankfurt-Tr. Inv. Luxemburg AG v. United Techs. Corp.*, 336 F. Supp. 3d 196, 220 (S.D.N.Y. 2018) (rejecting admission argument when the speaker "never made any admissions of doubts as to his *prior opinions*") (emphasis added), *aff'd*, 779 F. App'x 69 (2d Cir. 2019).

835051, at *3 (D. Md. Oct. 30, 1997) (describing defendant who took "quarterly trips" to Maryland as one who "traveled to Maryland on an ongoing basis"). The SEC does, too. *See, e.g.*, https://www.investor.gov/introduction-investing/investing-basics/glossary/form-10-k (explaining "[t]he federal securities laws require publicly reporting companies to disclose information on an ongoing basis," including through "quarterly reports"). And, most importantly, that is how Insperity discussed "medical claims costs," for which it had "experienced variability on a *quarterly basis* . . . based on the unpredictable nature of large claims." Ex. 1, 2018 10-K, 54 (emphasis added). The Opposition's linguistic gymnastics can neither change what Defendants said nor give rise to any inference of scienter, much less a strong one.[11] *See Furher v. Ericsson LM Tel. Co.*, 363 F. App'x 763, 765 (2d Cir. 2009) (affirming dismissal on scienter grounds when theory that "statements were inaccurate depend[ed] largely on viewing the statements in isolation and out of context").

**B.     The Opposition's additional scienter theories miss the mark.**

**1.      The CAC alleges no "gross misrepresentation" of the truth.**

Recognizing the CAC's failure to allege contrary facts, the Opposition suggests the Challenged Statements are such "gross misrepresentations" as to somehow give rise to scienter alone. Opp. 21–22. The cases on which the Opposition relies for support, however, involve truly egregious misrepresentations that were fundamentally incompatible with well-pleaded, contemporaneous *internal information*. *E.g.*, *S.E.C. v. StratoComm Corp.*, 2 F. Supp. 3d 240, 259–60 (N.D.N.Y. 2014) (sole officer and director of penny stock company said company sold sophisticated telecommunications system when it had never built, tested, or sold any such

---

[11] This is not the first time Plaintiff's counsel has (unsuccessfully) sought to manufacture a securities fraud claim out of a professional employer organization's statements about analysis "on an ongoing basis" in the wake of the company experiencing "unexpected volatility resulting in claims activity that was higher-than-expected." *Welgus v. TriNet Grp., Inc.*, 2017 WL 6466264, at *3 (N.D. Cal. Dec. 18, 2017) (dismissing § 10(b) claim on falsity and scienter grounds), *aff'd*, 765 F. App'x 239 (9th Cir. 2019).

system); *Setzer v. Omega Healthcare Invs., Inc.*, 968 F.3d 204, 215 & n.16 (2d Cir. 2020) (real-estate company made undisclosed loan to financially struggling major "tenant to pay its rent and then express[ed] optimism about that tenant's performance because it is making 'partial monthly payments'"). The CAC contains no such allegations, Mot. 20–22, and the Opposition's reliance on its flawed BPA, mid-market sales, and cost-price mismatch theories only confirms as much.

*Mid-Market Sales.*[12] The Opposition never confronts the gaping hole in its mid-market sales theory: how Sarvadi's *prediction* that mid-market sales would make up for less-than-expected BPA growth constitutes an actionable opinion under *Omnicare*—let alone how the CAC alleges subjective disbelief of that opinion or severe recklessness from which scienter could otherwise follow. Mot. 13. Instead, the Opposition resorts to its now-familiar practice of decontextualizing Defendants' statements, citing the Q3 2019 statement concerning the "lower average size of accounts sold" as purportedly revealing as misleading the Q2 2019 statement that Insperity had "the biggest pipeline we've had, and *we are above last year in sales for the year*." Opp. 13. In reality, Insperity explained that its Q3 2019 year-over-year dip in mid-market sales was connected to its Q3 2018 "enroll[ment]" of its "largest account ever," which made "year-over-year comparisons beginning in July" 2019 "difficult." Ex. 4, 11/04/2019 Tr., 5. That, of course, does not render false the Q2 2019 statements about a strong start to the year. Nor was the unique comparator of Insperity's large Q3 2018 sale belatedly sprung on investors; again, the Opposition tellingly stops short its quotation of the Q2 2019 statement:

> The mid-market, it's a little newer, of course, a little choppier just because it's fewer salespeople out there and -- but the channel is really strong right now. We've got the biggest pipeline we've had, and we are above last year in sales for the year. *We did have a really large account last year that came on midyear. We didn't have a repeat of that yet this year*, but there's a lot of things in the hopper.

Ex. 9, 7/29/19 Q2 Tr., 8 (emphasis added). There was no misrepresentation at all, let alone a

---

[12] This Section also applies to Section III.B.3 of the Opposition.

7

"gross" one.

*Cost-Price Mismatch.*[13] The Opposition rehashes the CAC's cost-price mismatch theory, Opp. 14–15, 21, which relies on equal parts (a) Defendants' subjective commentary regarding the sufficiency of Insperity's pricing (absent discrete, contrary facts that could demonstrate an actionably false opinion),[14] and (b) a narrative that Defendants concealed Insperity's pricing increases in FY 2019 (something the Motion thoroughly discredited by pointing to Defendants' actual statements explaining that Insperity *was* "building in price increases," increases for which the CAC alleges no *facts*—only conclusions—connecting them to large healthcare claims). Mot. 9, 13. Faced with public statements disclosing the very information it claims was concealed, the Opposition simply declares the whole matter a "factual dispute," Opp. n.15, seemingly oblivious to the black letter law that "[i]f the allegations of a pleading are contradicted by documents made a part thereof, the document controls and the court need not accept as true the allegations of the pleading." *Reilly v. U.S. Physical Therapy, Inc.*, 2018 WL 3559089, at \*14 & n.18 (S.D.N.Y. July 23, 2018) (collecting cases).

### 2. The Opposition's "detailed discussions" theory does not move the needle.

Lacking confidential witnesses, contemporaneous contrary reports, or any contradictory information at all, the Opposition declares that Defendants' "detailed discussions" are themselves "indicative of their awareness of (or recklessness toward)" contrary facts. Opp. 22. Yet the Opposition never even identifies the contrary facts to which Defendants supposedly had access, besides recycling the overtly hindsight-based allegations about insufficient BPAs and mid-market sales. *Supra* § II.A; Opp. 22. Nor do the Opposition's cases suggest the CAC can sidestep its glaring absence of contrary facts. *See In re Atlas Air Worldwide Holdings, Inc. Sec.*

---

[13] This section applies to Section III.B.4 of the Opposition.

[14] The referenced factual statement—Insperity was "actually a little ahead" on client renewals as of November 4, 2019, Opp. 14—is unaccompanied by any particularized allegations demonstrating it was false when made.

8

*Litig.*, 324 F. Supp. 2d 474, 489 (S.D.N.Y. 2004) (full sentence that Opposition quotes reads: "Indeed," under core operations theory, "*if facts that contradict a high-level officer's public statements were available when the statements were made*, it is reasonable to conclude that the speaker had intimate knowledge of those facts or should have known of them.") (emphasis added); *Haw. Structural Ironworkers Pension Tr. Fund v. AMC Ent. Holdings, Inc.*, 422 F. Supp. 3d 821, 850–52 (S.D.N.Y. 2019) (relying on CWs and CEO's statements about thorough diligence and "theater by theater" review of newly acquired movie theaters to infer that CEO knew that the theaters lacked key upgrades).

### 3.    The Opposition's "temporal proximity" theory is baseless.

Again trying to elide this Circuit's emphasis on sufficiently pleaded contrary facts, the Opposition cites out-of-circuit cases for the proposition that the "temporal proximity" of Insperity's alleged corrective disclosures gives rise to scienter. Opp. 22. But those cases do not bless temporal proximity as a standalone basis for scienter,[15] and courts in this District regularly observe that "temporal proximity alone does *not* raise a circumstantial inference of fraud"; instead, plaintiffs must "specifically allege defendants' knowledge of facts or access to information contradicting their public statements." *Pearlstein v. BlackBerry Ltd.*, 93 F. Supp. 3d 233, 247 (S.D.N.Y. 2015) (emphasis added) (collecting cases), *aff'd in part, vacated in part on other grounds*, 660 F. App'x 23 (2d Cir. 2016); *In re Supercom Inc. Sec. Litig.*, 2018 WL 4926442, at *32 (S.D.N.Y. Oct. 10, 2018) (reiteration of January 2015 outlook in September 2015 and subsequent issuance of revised outlook in November 2015 did not give rise to a strong inference of scienter); *Bettis v. Aixtron SE*, 2016 WL 7468194, at *16 (S.D.N.Y. Dec. 20, 2016)

---

[15] *See Institutional Inv'rs Grp. v. Avaya, Inc.*, 564 F.3d 242, 264 (3d Cir. 2009) (temporal proximity allegations "bolster[ed]" particularized allegations of "true facts" through CWs, contrary reports, and admissions); *Reese v. Malone*, 747 F.3d 557, 574–75 (9th Cir. 2014) ("temporal proximity" allegations did not "independently establish scienter"). The Opposition's only in-circuit case does not address scienter at all. *Iowa Pub. Emps.' Ret. Sys. v. MF Glob., Ltd.*, 620 F.3d 137 (2d Cir. 2010).

("[P]roximity alone, without corroborative evidence, is insufficient to give rise to a strong inference of scienter.").

***Stop-Loss Coverage.***[16] The Opposition goes on to list as examples of "temporal proximity" a few of its falsity theories, discussed *supra* § II.B.1. Opp. 23. It caps off that list with allegations about Insperity's decision to add a stop-loss protection to its healthcare plan. *Id.* The Motion already debunked that theory, supplying the Court (and Plaintiff) with the actual statements on the November 2019 call that demonstrated Defendants did not (as the Opposition suggests) "completely reverse[] their position," *id.*, but were instead explicitly *considering* adding a stop-loss protection. Mot. 10 (citing Ex. 6, 11/25/19 Investor Call). The Opposition simply ignores the Motion and transcript on this point. This theory, like the others, is meritless.

**C.      The Opposition does nothing to realign the competing inferences in favor of scienter.**

Finally, the Opposition leaves totally unexplained the "why" for its various securities fraud theories—theories that make no economic sense given Insperity's massive FY 2019 buyback of stock. Mot. 19–20. It recycles a few of its "admission" contentions, *see supra* § II.A.1, but otherwise supplies no authority contradicting the well-settled principle that—absent discrete, particularized facts demonstrating knowledge of contrary information—the most compelling inference is that the company's financial guidance turned out to be too optimistic. *Born v. Quad/Graphics, Inc.*, 2021 WL 736839, at *9 (S.D.N.Y. Feb. 25, 2021). "[M]isguided optimism is not a cause of action," and neither is "fraud by hindsight." *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1129 (2d Cir. 1994). The CAC has pleaded nothing more.

### III.      CONCLUSION

Defendants respectfully request that the Court dismiss the CAC with prejudice.

---

[16] This section applies to Section III.B.5 of the Opposition.

Dated:  July 12, 2021                    Respectfully submitted,

                                         **BAKER BOTTS L.L.P.**


                                         By: /s/ *David D. Sterling*
                                               Brian C. Kerr
                                               NY Bar No. 2806123
                                               30 Rockefeller Plaza
                                               New York, NY 10112-4498
                                               Tel: (212) 408-2543
                                               Fax: (212) 259-2543
                                               brian.kerr@bakerbotts.com

                                               David D. Sterling (*pro hac vice*)
                                               Texas Bar No. 19170000
                                               Amy Pharr Hefley (*pro hac vice*)
                                               Texas Bar No. 24046046
                                               Anthony J. Lucisano (*pro hac vice*)
                                               Texas Bar No. 24102118
                                               Elizabeth Furlow Malpass (*pro hac vice*)
                                               Texas Bar No. 24109899
                                               Frank Mace (*pro hac vice*)
                                               Texas Bar No. 24110609
                                               910 Louisiana St.
                                               Houston, Texas 77002
                                               Tel: (713) 229-1946
                                               Fax: (713) 229-7946
                                               david.sterling@bakerbotts.com
                                               amy.hefley@bakerbotts.com
                                               anthony.lucisano@bakerbotts.com
                                               elizabeth.furlow@bakerbotts.com
                                               frank.mace@bakerbotts.com

                                         **COUNSEL FOR DEFENDANTS INSPERITY, INC.,
                                         PAUL J. SARVADI, AND DOUGLAS S. SHARP**

11